### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTRN DIVISION (DAYTON)

| | | |
|---|---|---|
| **WEIJIE LU,** | : | |
| **1349 Clydesdale Court** | : | **Case No.** |
| **Dayton, Ohio 45458** | : | |
| | : | **Judge** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **UNIVERSITY OF DAYTON,** | : | **DEMAND FOR JURY TRIAL** |
| **c/o ACME Agent, Inc.** | : | |
| **41 S. High Street, Suite 2800** | : | |
| **Columbus, Ohio 43215** | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

Now comes Plaintiff Weijie Lu, by and through undersigned counsel, and for his Complaint against Defendant University of Dayton, states and avers as follows:

## THE PARTIES

1.  Plaintiff Weijie Lu (hereafter "Plaintiff" or "Dr. Lu") is a resident of the State of Ohio, County of Montgomery.

2.  Defendant University of Dayton ("Defendant" or the "University") is an Ohio corporation with its principal place of business in Dayton, Ohio, Montgomery County.

3.  At all times alleged herein, Plaintiff was an employee of Defendant in the same has been defined by Title VII of the United States Code and Title 4112 of the Ohio Revised Code.

## JURISDICTION AND VENUE

4.  Plaintiff incorporates his allegations set forth in the preceding paragraphs as if fully written herein.

5.     Jurisdiction of this Court is involved pursuant to 42 USCS § 2000-2(a) and 28 USC Section1331. Supplemental Jurisdiction invoked pursuant to 28 USC § 1367.

6.     Plaintiff has satisfied all pre-requisites for filing suit, including but not limited to obtaining a Notice of Suit Right from the Equal Employment Opportunity Commission dated Feb 21, 2023. A copy of the "Notice" is attached hereto as Exhibit A.

7.     The unlawful racial discrimination, violations of US citizenship and constitutional rights of minorities, and academic plagiarism alleged below were committed within the State of Ohio, in the Southern District, Western Division of this Federal Court.

8.     At all relevant times hereto, Plaintiff worked or affiliated with Defendant in Montgomery County, Ohio, which is the county in which Defendant conducted the activity that gave rise to Plaintiff's claims for relief, and the county in which all or part of Plaintiff's claims arose.

9.     At all relevant times pertinent hereto, Plaintiff was an employee (adjunct professor or affiliated as technical advisor with Defendant ) within the meaning of Title VII of the Civil Rights Act of 1964 as amended, 42 USC § 2000e (d) as well as Title 4112 of the Ohio Revised Code.

10.     At all times pertinent hereto, Defendant was an "Employer" within the meaning of Title 4112 of the Ohio Revised Code.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11.     Plaintiff incorporates his allegations set forth in the preceding paragraphs as if fully rewritten herein.

12.     Plaintiff received a Ph.D. in Materials Engineering from Brown University in 1996, a Master's of Science in Chemical Engineering from Brown University in 1993, a Master's of

Science in Physics from the University of Memphis in 1991, a Master's of Science in Chemistry from the University of Science and Technology of China in 1988, and a Bachelors of Science degree in Chemical Engineering from the Zhejian Institute of Technology in 1985.

13.     Dr. Lu is of Chinese descent.

14.     The University hired Dr. Lu in August 2014 as an adjunct professor in the University's Department of Physics.

15.     Plaintiff was awarded more than $6M research and educational grants and contracts as principal investigator or program director from NSF, AFOSR, ARO, MDA, NASA, AFRL, ACS, and NIH.

16.     Plaintiff is a well-established nano-materials scientist. One of his significant contributions in low-dimensional nanomaterials was the identification of "Single layer graphitic flakes", two-dimensional nano-structure embedded in amorphous carbon in 2002 with collaboration with the Air Force Research Lab (AFRL), and its applications for electronic devices, published in 2022/ 2023. Two patents were awarded for "single layer graphitic flakes" for discovery of applications of electronic device components in 2004 . "Single layer graphitic layer" was re-named as "Graphene" in the materials research community after new techniques to produce isolated graphene was developed in 2004/2005.

17.     Plaintiff developed new growth theory of low dimensional carbon nano-structures, received more than $2M grants on this topic.

18.     An article "Graphene: Fundamentals, and Functionalities", by Plaintiff was one of the most read 10 articles of MRS Bulletin in 2013. Plaintiff gave six invited/Keynote talks at national and international professional conferences on this topic.

19. Graphene is considered as the material for 21st century. Plaintiff's work in single layer graphitic layer or graphene opened a new frontier on materials research. His group at Fisk University was expanded to 15 members, and he started at carbon nanomaterials in electronic and optical applications for defense systems in 2001 at AFRL/RXEE (Branch of Electronic Materials) as a National Research Council (NRC) summer faculty. In 2011, 40+ scientists at AFRL/RX (Materials and Manufacturing Directorate) joined the low-dimensional nano-materials research and developments.

20. Plaintiff's another research area is optical composite materials with high resistance to high energy laser attacks, funded by NASA, NSF, and AFRL/RX programs (LDF, MLP, and 6.2). The Branch of Photonic Materials (AFRL/RXEP, formal RXAP) recognized that Plaintiff has developed "**a promising approach to this requirement**" of specific applications in the Air Force/Space Force defense systems.

21. Plaintiff developed several research projects in wide bandgap semiconductors for high power and high temperature applications, received multiple grants from NASA, NSF, MDA, ARO, and AFOSR.

22. Plaintiff received "Excellence in Teaching Award", the highest honor for teaching excellence at Fisk University, only three professors received the award in 25 years at the University.

23. Plaintiff received tenure after less than 5 years on the tenure-track, and the average is 7-8 years for college professors to received tenure.

24. Plaintiff advised 5 postdoctoral associates and 17 graduate students

25. Plaintiff was a tenured associated professor in Chemistry and associate Professor in Physics at Fisk University, and Adjunct Professor in materials sciences at Vanderbilt University.

He was a consultant, summer faculty, and visiting scientist at AFRL/RX, and served as the Person-of-Contact of the Fisk-AFRL/RX EPA program (Educational Partnership Agreement).

26.     Plaintiff was adjunct professor in physics at the University of Dayton from 2014-2020.

27.     Plaintiff developed Research and Educational partnerships with the agencies of the US Dept of Defense, and recognized as "Successful Stories": "Integrating student training with developing DOD interested research program" by Army Research Office (ARO) in 2009 "RX Minority Programs provide students effective paths entering STEM" by AFRL/RX (Materials and Manufacturing Directorate) in 2011.

28.     Plaintiff received excellent teaching evaluation rating from students (4.2-4.9/5.0) at Fisk University and (3.5-4.5/5.0) at University of Dayton.

29.     Plaintiff served as the Director at Fisk University of the National Center of Learning and Teaching Nanosciences and Nanoengineering (NCLT), funded by NSF. Plaintiff organized a two-week Summer Professional Development Workshop for Science Teachers annually, and conducted one of the largest nano-science module field tests in US at middle/high schools (>4,500 students and 80 teachers), and coordinated a new high school course development of "Introduction of Nanosciences", approved by the TN State Board of Education in 2009.

30.     Plaintiff served the guest-editor for MRS Bulletin extended issue on graphene in 2012, co-organizer of low-D carbon symposiums and forum at MRS meetings in recent years. about 600 scientists attended the Graphene Forum in 2012 at Boston.

31.     Plaintiff served as a member of the MRS NNI (National Nanotechnology Initiates) Task Force 2010

32.     Plaintiff served as Proposal Reviewer for AFSOR, NASA, and NSF

33. Plaintiff served as NSF Review Panel

34. Plaintiff is an expert in optical materials with high resistance to high energy laser attacks, and he stated at this research project in 2000 at Fisk University.

35. Plaintiff was funded by NASA under the microgravity program from 2000-2004. After the NASA microgravity program ended in 2004, Plaintiff worked with Dr. Augustine Urbas at AFRL/RXAP by LDF (Laboratory Director Fund) in 2006-07, and with Dr. Angela Campbell and Dr. Tom Cooper by MLP (Minority Leadership Fund) and the in-house 6.2 fund in 2008-2013.

36. Plaintiff advised 4 graduate students with various funds, including NASA, AFRL, NSF, and the Gates Foundation, 8 undergraduate students participated in this research project in the summer REU programs at Fisk University.

37. Plaintiff conducted various research issues, ranging from microgravity efforts, aero-gel and xero-gel composites by sol-gel processing, nano-polymeric structures, solubility of nonlinear optical components, damage thresholds of laser energy, electronic excited states in laser process, and etc.

38. Plaintiff and his students gave 9 presentations at the national and international conferences and AFRL review meetings on this topic.

39. A part of his research program was for his student, Mr. Sorrie Ceesay, a Ph. D graduate student at the University of Dayton, awarded by the DAGSI program, and Plaintiff served as the technical advisor for Mr. Ceesay from 2012-13.

40. Mr. Ceesay is a graduate student of Plaintiff. Mr. Ceesay received his B.S. from the University of Memphis, and enrolled at Fisk University in 2009/10 as a M.S. student Under

the supervision of Plaintiff. He conducted a research project of SiC high power electronic device for his M.S. thesis.

41.     Mr. Ceesay moved to Dayton in 2011 and worked at AFRL/RXAN with Plaintiff as a student under the Fisk-AFRL/RX EPA (educational partnership agreement). Mr. Ceesay received his M.S. of Chemistry in 2012 at Fisk University.

42.     Mr. Ceesay enrolled at the Materials Engineering program as a Ph.D student at the University of Dayton in August 2012. Plaintiff served as his Ph.D advisor in 2012-13, and Mr. Ceesay continued his research on SiC high power devices under the NSF grant of Plaintiff.

43.     The NSF grant ended in 2013, Plaintiff discussed with Prof. Charles Browning, the Chair of Dept of Chemical and Materials Engineering at the University of Dayton. Mr. Ceesay changed his research project to laser resistance optical materials, and plaintiff continued to serve as the advisor.

44.     Plaintiff developed a research proposal **"Organic photoconductor for non-linear applications"** to the DAGSI (Dayton Area Graduate Studies Institute), submitted by Plaintiff as technical advisor and Charles Browning as academic advisor. The proposal was funded as DASGI-RX5-UD-13/4 and 13/5.

45.     Plaintiff's project has impacted on the research program at AFRL/RXEP (formal RXAP). For the past 30 years, the RXEP group has developed new materials for potential absorption optical limiter applications. However, these liquid and powder materials at RXEP cannot used as optical components directly for applications in defense systems. Dr. Joy Haley, the formal research team leader, at RXEP has stated that Plaintiff's project provides ***"a promising approach to this requirement"*** to produce non-linear optical components for specific applications in defense systems.

46.     The project developed by Plaintiff is well aligned with the emerging laser based defense systems of the Air Force and Space Force.

47.     Dr. Lu taught one or two Physics classes each semester for the University between August 2014 and spring semester 2020.

48.     Chris Muratore is a Caucasian, he was a scientist for a decade at the Thermal Materials Branch of AFRL/RX. He was not able to develop his own research program at AFRL/RX, resigned from AFRL in 2011-12, and became a non-tenured research staff at Dr. Browning's group.

49.     From 2012-14, Chris Muratore was still not able to develop his own research program at Dr. Charlie Browning's research group at the University of Dayton.

50.     From the documents from DAGSI, on Oct 17, 2013, Dr. Browning, the departmental Chair, emailed Dr. Elizabeth Downie, Director of DASGI: "Chris is not faculty, he is a research engineer with the School of Engineering in my department. We are hoping that a faculty position will eventually open for him".

51.     Browning decided to hire Muratore as a faculty member at UD before any position was open.  Since faculty members should have abilities to develop their own research programs, Muratore was not able to develop his own research program, thus, Dr. Browning told Plaintiff: "I want Muratore to help your student", but told DAGSI by email that Muratore was to take over this project and remove Plaintiff.

52.     Both Muratore and his new student, Rachel Rai are Caucasians. Plaintiff is an Asian American, and his student, Sorrie Ceesay, is an African American.

53.     Chris Muratore never works on optical materials, and has no experience in low dimensional graphene and nano-composites.

54. In order to make Muratore a professor, a series of racism actions against Plaintiff and his students were taken by Defendant.

55. On January 28, 2020, Dr. Lu reported to the University that the University terminated and discriminated against a student on the basis of his African American race for which Dr. Lu was a Ph.D advisor and requested the University remedy its actions.

56. On July 10, 2020, the University terminated Dr. Lu as an adjunct professor for the Fall 2020 term.

57. The University encouraged Dr. Lu to apply for full-time positions with the University.

58. Dr. Lu filed a charge with the Ohio Civil Rights Commission regarding his report of discrimination and his termination on January 5, 2021.

59. In January 2021, Dr. Lu became aware that research he worked on was included in a paper published by Christopher Muratore without proper citation to his work. Dr. Lu submitted a complaint to the University reporting Muratore's unethical research conduct and plagiarism.

60. The University conducted an investigation and Muratore was interviewed.

61. In April 2021, Dr. Lu applied for a full-time faculty position as an Associate Professor in the Department of Chemical and Materials Engineering with the University (the "Engineering job").

62. Dr. Lu maintained the minimum qualifications for the Engineering job due to his extensive education, teaching history, and prior research.

63. The search committee for the Engineering job included Donald Klosterman, Kristen Krupa, Dennis Buchanan, and Christopher Muratore.

64. At the time the search committee reviewed Dr. Lu's application for the Engineering

job, Muratore was aware of Dr. Lu's complaint against him. Additionally, at least one or more

65.     members of the search committee were aware that Dr. Lu filed a charge with the OCRC alleging discrimination and retaliation.

66.     The University rejected Dr. Lu for the Engineering job, despite his qualifications.

67.     The University hired a less qualified individual for the Engineering job in mid-summer 2021.

68.     The University's reasons for Dr. Lu's termination and its failure to hire Dr. Lu into a full-time position are pretext.

## <u>COUNT I – RETALIATION</u>

69.     Plaintiff hereby incorporates his allegations set forth in the preceding paragraphs as if fully rewritten herein.

70.     Plaintiff engaged in protected activities by filing two charges with the Ohio Civil Rights Commission.

71.     Defendant was aware Plaintiff engaged in a protected activity.

72.     Defendant failed to hire Plaintiff for the Engineering job.

73.     Plaintiff's protected activity was causally connected to his rejection for the Engineering job.

74.     Defendant acted with malice and/or with reckless malfeasance to Plaintiff's protected rights, and for such willful conduct, Defendant is liable for punitive damages.

75.     As a direct and proximate result of Defendant's conduct set forth above, Plaintiff has suffered damages, including but not limited to emotional and physical distress, suffering,

inconvenience, mental anguish, loss of enjoyment of life, lost wages and income, and other benefits to which he was entitled, pain and suffering, liquidated damages, attorney fees, costs interests and such further relief as this Court may deem proper in an amount to be determined at trial.

**WHEREFORE,** Plaintiff Weijie Lu prays for judgment against Defendant University of Dayton, for compensatory and punitive damages, including but not limited to emotional and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, lost wages and income, and other benefits to which he was entitled, in an amount to be determined at trial and an award of Plaintiff's costs and reasonable attorney fees incurred relating to this action; ALL TOGETHER WITH such other relief as may be just, necessary and proper.

Respectfully submitted,

KEMP, SCHAEFFER, & ROWE CO., L.P.A.

/s/ Erica Ann Probst
Erica Ann Probst #0073486
Andrea L. Salvino #0097768
88 West Mound Street
Columbus, Ohio 43215
(614) 232-8692
(614) 469-7170 (fax)
Email: Erica@ksrlegal.com
            Asalvino@ksrlegal.com

*Counsel for Plaintiff*

## JURY DEMAND

Now comes Plaintiff, by and through counsel, and hereby demands that a jury hear the above case.

Respectfully submitted,

KEMP, SCHAEFFER, & ROWE CO., L.P.A.

/s/ Erica Ann Probst
Erica Ann Probst #0073486
Andrea L. Salvino #0097768
88 West Mound Street
Columbus, Ohio 43215
(614) 232-8692
(614) 469-7170 (fax)
Email: Erica@ksrlegal.com
          Asalvino@ksrlegal.com

*Counsel for Plaintiff*